THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA ex rel.         )
MATTHEW BURKE and DAVID CURTIN,          )
                                         )
        Plaintiffs,                      )
                                         )
v.                                       )      Civil Action No:
                                         )      **FILED UNDER SEAL**
ROBERTO MANGI f/k/a ROBERTO              )
MANGIARANO,                              )
                                         )
MARINA AFRA a/k/a MARINA MANNINO         )
a/k/a MARINA MANGIARINO, individually    )
and in her capacity as partner/member/   )
shareholder of FUNDING MERCHANT          )
SOURCE, NY, INC., FUNDING MERCHANT       )
SOURCE, LLC, FMS CAPITAL, LLC JET        )
STREAM CAPITAL, GOTHAM CAPITAL, INC, )
ELEVATION CAPITAL, LLC, and MERCY        )
FALLS, LLC,                              )
                                         )
LAWRENCE ("LARRY") SCHIAVI, individually )
and in his capacity as owner/partner/manager/ )
shareholder of BOOST BUSINESS FUNDING, )
LLC, FUNDING MERCHANT SOURCE, LLC,       )
GOTHAM CAPITAL, INC., and ELEVATION      )
CAPITAL, LLC,                            )
                                         )
NEIL WALSH, individually and in his capacity )
as partner/managing member/shareholder of )
BOOST BUSINESS FUNDING, LLC,             )
FUNDING MERCHANT SOURCE, LLC, and        )
ELEVATION CAPITAL, LLC                   )
                                         )
LUIS DANIEL MENDEZ, individually and in his )
capacity as partner/member of BOOST      )
BUSINESS FUNDING,LLC, FUNDING            )
MERCHANT SOURCE, LLC, GOTHAM             )
CAPITAL, INC., and ELEVATION CAPITAL,    )
LLC                                      )
                                         )
JENNIFER RETAS, individually and in her  )
capacity as partner/shareholder of FUNDING )

MERCHANT SOURCE NY, INC.,                                )
                                                         )
MARIA BENTLEY, individually and in her                   )
capacity as a partner/member of BOOST                    )
BOOST BUSINESS FUNDING, LLC,                             )
                                                         )
SOHRAB STEVEN AFRA a/k/a STEVEN                          )
AFRA, individually and in his capacity as                )
partner/member of GOTHAM CAPITAL, INC,                   )
FMS CAPITAL LLC, and MERCY FALLS, LLC, )
                                                         )
BOOST BUSINESS FUNDING, LLC,                             )
                                                         )
FUNDING MERCHANT SOURCE NY, INC.,                        )
                                                         )
FUNDING MERCHANT SOURCE, LLC,                            )
                                                         )
FMS CAPITAL, LLC,                                        )
                                                         )
JET STREAM CAPITAL,                                      )
                                                         )
GOTHAM CAPITAL, LLC,                                     )
                                                         )
MERCY FALLS, LLC,                                        )
                                                         )
ELEVATION CAPITAL, LLC,                                  )
                                                         )
JOHN DOE COMPANIES 1-10,                                 )
          Defendants.                                    )
_____ )

**QUI TAM COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs/Relators Matthew Burke and David Curtin, by and through their attorneys FLYNN, WIRKUS, YOUNG, P.C., bring this Complaint in the name of the United States of America against Defendants, and allege as follows:

## I.     PRELIMINARY STATEMENT

1.      This is an action to recover damages and civil penalties on behalf of the United States of America ("the Government") under the federal False Claims Act ("FCA"), 31 U.S.C. §§3279 et seq., arising from Defendant Roberto Mangi ("Mangi")

knowingly making, using, or causing to be made or used "a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly [concealing] or knowingly and improperly [avoiding] or [decreasing] an obligation to pay or transmit money or property to the Government." 31 U.S.C. §3729(a)(1)(G).

2.      Relators/Plaintiffs also seek recovery from all Defendants under New York's Fraudulent Conveyance Statute, New York Debtor Creditor Law ("NY D&C Law") §§270-276, as it is alleged that Defendant Mangi conveyed and continues to convey income and assets to Defendant Marina Afra and through a complex web of interlocking co-Defendant companies without fair consideration and in order to avoid paying an obligation to and/or judgment docketed in favor of the Government.  As such, Relators seek damages, attorneys fees, and equitable relief of having any such fraudulent conveyances annulled and set aside pursuant to NY D&C Law §278, as well as an order of attachment without notice pursuant to NY CPLR §6211 against Defendants Marina Afra and certain of the other Defendants under D&C Law §278 and under Article 62 of New York Civil Practice Law and Rules ("CPLR").

**II.      PARTIES**

3.      Plaintiffs incorporate by reference all of the allegations contained in the foregoing paragraphs as if fully restated herein.

4.      Plaintiff/Relator Matthew Burke ("Burke") is a citizen of the United States and a resident of the State of New York.  Plaintiff Burke worked as a consultant with Defendants Roberto Mangi, Boost Business Funding, LLC, and Neil Walsh, as an

equipment leasing specialist from July 2015 to October 2015 and, as such, has unique and first-hand knowledge of Defendants' dealings during such time.

5.      Plaintiff/Relator David Curtin ("Curtin") is a citizen of the United States and a resident of the State of New York.  Plaintiff Curtin worked with Defendants Roberto Mangi, Boost Business Funding, LLC., Neil Walsh, Elevation Capital, LLC, Maria Bentley, Luiz Daniel Mendez and Funding Merchant Source, LLC, as a Funding Specialist in Buffalo, New York from April 10, 2015 to December 8, 2015, and worked closely with Defendants Walsh, Mangi, Elevation and FMS, and, as such, was made privy to inside information and has unique and first-hand knowledge of Defendants' dealings during such time.

6.      Plaintiffs Matthew Burke and David Curtin bring this action for violations of 31 U.S.C. §3729 et seq., on behalf of themselves and the United States pursuant to 31 U.S.C. §3730(b)(1).  Plaintiffs have knowledge of the Defendant's submission of false claims to the federal government as alleged herein.

7.      Upon information and belief, Defendant Roberto Mangi ("Mangi"), also known as Roberto Mangiarano, is an individual residing in Manhattan Beach, California and operating businesses in the Western District of New York.  Mangi, upon information and belief, is the equitable or true owner/shareholder and or member in whole or in part of  Defendant companies Boost Business Funding, LLC; Funding Merchant Source NY, Inc.; Funding Merchant Source, LLC; FMS Capital, LLC; Jet Stream Capital; Gotham Capital, Inc.; Elevation Capital, LLC, and one or more other "John Doe" companies.

8.      Upon information and belief, Defendant Marina Afra is the sister of Defendant Mangi and the wife of Defendant Sohrab Steven Afra, and resides in

Hermosa Beach, California. Marina Afra is the partner/member/shareholder in full or in part of Defendant companies Funding Merchant Source NY, Inc.; Funding Merchant Source, LLC; FMS Capital, LLC; Jet Stream Capital; Gotham Capital, Inc.; Elevation Capital, LLC, Mercy Falls, LLC, and one or more other currently unknown John Doe companies controlled in whole or in part by Mangi.

9.     Upon information and belief, Defendant Lawrence Schiavi ("Schiavi") is a resident of Clarence Center, New York, and is an owner, partner, manager, and/or shareholder in whole or in part of Defendant companies Boost Business Funding, LLC; Funding Merchant Source, LLC; Gotham Capital, Inc.; Elevation Capital, LLC, and one or more other currently unknown John Doe companies controlled in whole or in part by Mangi.

10.     Upon information and belief, Defendant Neil Walsh ("Walsh") is a resident of Grand Island, New York, and is the main "front man" for Boost Business Funding, LLC, and owner, partner, manager, and/or shareholder in whole or in part of Defendant companies Boost Business Funding, LLC; Funding Merchant Source, LLC; Elevation Capital, LLC; and one or more other currently unknown John Doe companies controlled in whole or in part by Mangi.

11.     Upon information and belief, Defendant Luis Daniel Mendez ("Mendez") is a resident of East Amherst, New York, and is an owner, partner, manager, and/or shareholder in whole or in part of Defendant companies Boost Business Funding, LLC; Funding Merchant Source, LLC; Gotham Capital, Inc.; Elevation Capital, LLC, and one or more other currently unknown John Doe companies controlled in whole or in part by Mangi.

12.    Upon information and belief, Defendant Jennifer Retas is a resident of Woodbury, New York, and is a legal shareholder, in name only, of Defendant company Funding Merchant Source NY, Inc., a company actually controlled solely by Mangi.

13.    Upon information and belief, Defendant Maria Bentley is a resident of Buffalo, New York, and is a legal member and/or owner of Defendant Boost Business Funding, LLC, a company actually controlled in whole or in part by Mangi.

14.    Upon information and belief, Defendant Sohrab Steven Afra ("Steven Afra") is Defendant Marina Afra's husband, Defendant Mangi's brother-in-law and close friend since childhood, and a resident of Hermosa Beach, California and Great Neck, New York.  He is a licensed attorney in New York and has been instrumental in forming one or more of these Defendant companies on behalf of Mangi.  He is a legal member and/or owner of Defendant companies Gotham Capital, Inc, FMS Capital, LLC, and Mercy Falls, LLC, as well as one or more other currently unknown John Doe companies controlled in whole or in part by Mangi.

15.    Upon information and belief, Defendant Boost Business Funding, LLC, ("Boost") is a Delaware limited liability company selling and brokering high-interest merchant cash advances operating out of a call center in Cheektowaga, New York and is a company actually owned and controlled in whole or in part by Mangi.

16.    Upon information and belief, Defendant Funding Merchant Source NY, Inc., ("FMS NY") is a New York corporation selling and brokering high-interest merchant cash advances operating out of a call center in Jericho, New York, and is actually owned and controlled in whole by Mangi.

17.     Upon information and belief, Defendant Funding Merchant Source, LLC ("FMS CA"), is a Delaware limited liability company selling and brokering high-interest merchant cash advances operating out of a call center in El Segundo, California and a company actually owned and controlled in whole or in part by Mangi.  The California Secretary of State lists FMS CA's address as 352 Sonwil Drive, Cheektowaga, NY, the actual physical and operational address of co-Defendant Boost Business Funding.

18.     Upon information and belief, Defendant FMS Capital, LLC ("FMS Capital") is a Nevada limited liability company listing its managing members as Defendant Marina Afra and Defendant Mercy Falls, LLC.  FMS Capital is a merchant cash advance direct funder owned and controlled in whole by Mangi.

19.     Upon information and belief, Defendant Jet Stream Capital ("Jet Stream") is a company formed or to be formed and iis a merchant cash advance direct funder owned and controlled in whole by Mangi.

20.     Upon information and belief, Defendant Gotham Capital, Inc., ("Gotham") is a Nevada corporation listing its president as Defendant Steven Afra.  Gotham is a merchant cash advance direct funder owned and controlled in part by Mangi.

21.     Upon information and belief, Defendant Mercy Falls, LLC ("Mercy Falls") is a New York limited liability company formed upon information and belief by Defendant Steven Afra to "insulate" Defendant FMS Capital, as Mercy Falls is a legal owner/member of Defendant FMS Capital and upon information and belief is a company owned and controlled in whole or in part by Mangi.

22.     Upon information and belief, Elevation Capital, LLC ("Elevation") is a Delaware limited liability company and a direct funder/source of capital for merchant

cash advances operating out of the same offices as co-Defendant Boost in Cheektowaga, New York. Elevation is a merchant cash advance direct funder/source of capital owned and controlled in part by Mangi and Defendants Schiavi and Mendez.

23.    Upon information and belief, Defendants John Doe Companies 1-10 are yet-to be-named companies and/or entities owned and/or controlled in whole or in part by Mangi.

## III.    JURISDICTION AND VENUE

24.    Plaintiffs incorporate by reference all of the allegations contained in the foregoing paragraphs as if fully restated herein.

25.    This Court has jurisdiction over the subject matter of this action pursuant to 31 U.S.C. § 3732, which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

26.    Venue is proper in this district pursuant to 28 U.S.C. §1391 (b)-(c), and 31 U.S.C. §3732(a) because one or more Defendants resides and/or transacts business within this district and the facts forming the basis of this Complaint occurred within this district.

27.    The facts and circumstances of Defendants' violations of the federal FCA have not been publicly disclosed in a criminal, civil, or administrative hearing, nor in any congressional, administrative, or General Accounting Office or Auditor General's report, hearing, audit, or investigation, or in the news media.

28.    Relators Burke and Curtin are the original source of the information upon which this Complaint is based, as that phrase is used in the federal FCA.

29.    A copy of this Complaint and written disclosure of substantially all material evidence and information the Relators possess will be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure

30.    The Relators/Plainitffs have complied with all other conditions precedent to bringing this action.

## IV.    FACTUAL BACKGROUND

31.    Plaintiffs incorporate by reference all of the allegations contained in the foregoing paragraphs as if fully restated herein.

32.    On or about December 3, 2002, Defendant Roberto Mangi, then known as Roberto Mangiarano, entered into a plea deal with the United States Attorney Office in the Eastern District of New York, pleading guilty to one count of Conspiracy to Commit Securities, Mail and Wire Fraud and one count of Conspiracy to Commit Money Laundering.

33.    Consequently, Defendant Mangi was sentenced to fifty-one (51) months of imprisonment on each count, to run concurrently, and to two (2) years of supervised release on each count, to run concurrently.

34.    Defendant Mangi was required to pay $19,864,129.75 in restitution to his former clients.  Additionally, Defendant Mangi was barred from association with any broker or dealer, barred from participating in any offering of penny stock, and ordered to cease and desist from committing or causing any violations or future violations of Section 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, and Exchange Act Rule 10b-5.

35.     Defendant Mangi was also ordered to pay to the federal government $1,028,737.86 plus prejudgment interest of $640,447.30 for a total of $1,669,185.16, less any amount Defendant may show he has paid as restitution in his criminal case, and to pay a civil penalty of $220,000.00.

36.     The Government docketed one or more judgments against Mangi in Nassau County, New York, for over $19,000,000.

37.     Upon information and belief, Mangi has not satisfied the monies due and owing the Government and, upon information and belief, has substantially underreported his income and assets to avoid paying the Government these monies by making false statements to the Government as to his ability to pay.

38.     It is estimated by Relators based on statements made by Mangi to them as well as financial analysis by them as insiders that Mangi's income is at least $3.8 million per year from commissions alone and perhaps up to twice that amount from profits, dividends and/or distributions from one or more of Defendant companies Mangi owns and/or controls.  Additionally, his net worth is extrapolated based on the revenues of Defendant companies, their value, and the profit margins associated thereto at between $10 and $20 million. Mangi has, upon information and belief, avoided officially reporting any of this income or wealth primarily by shifting income and hiding his ownership of the Defendant companies primarily through his sister, Marina Afra.

39.     Mangi came to this current position of wealth through his aggressive salesmanship learned through his experience as a broker and "boiler room" salesman at First United, Lexington Capital and Stockton Equities Group, the same association that

led to his indictment and aforementioned plea agreement for securities fraud and money laundering.

40.     Upon information and belief, following Mangi's release from prison in July of 2008, he somehow got a job selling merchant cash advances and learning the business of alternative financing.  As an aggressive salesman, Mangi did quite well, according to his own words, and eventually started his own MCA brokerage company, Funding Merchant Source NY, Inc. (FMS NY) being formed on February 7, 2011.  FMS NY is listed as owned by his sister Marina Afra and Defendant Jennifer Retas.

41.     By way of industry background, merchant cash advances (MCA's) are a relatively new alternative funding product for businesses.  If a business needs cash for working capital, often a traditional bank or finance company will deny the loan or require too much paperwork or time to make a lending decision.  The underwriting is much simpler with MCA's, requiring usually just an application, personal guarantee by a business owner and six months bank statements.  The downside is that it is expensive money, and the payback begins the next day after funding and is paid back every day instead of monthly.  Additionally, despite legal semantics of MCA's being couched as "discounted purchase of future revenues," they are in essence a loan at very high interest rates, the equivalent APR rate of anywhere from 50% to over 300% interest. Moreover, while there are many legitimate funders in this sphere, there are also many abuses and "junk fees" at funding and excessive brokerage commissions tacked on.

42.     In the industry, there are brokers who do not fund directly; they merely sell to the business owners.  There are direct funders or capital sources that actually provide the money, and from there they may "lay off" a percentage (very much like

commercial banks) by syndicating with other direct funders especially on deals over $100,000.00.  Finally, there are companies that both broker and direct-fund.  It is a growth industry, and MCA's now account for over $5 billion per year in funding.

43.    Most MCA's are sold and marketed through outbound telemarketing solicitation calls to business owners by what are termed "ISO's" or independent sales organizations.  Some are more professional than others, calling only those businesses that are "qualified leads" or who have expressed interest in an alternative financing product, and take a consultative approach to obtain financing that is in the best interest of the customer.  Other ISO's are more sales "boiler rooms" and often use unethical business practices to close these MCA loans.

44.    By way of further background into Defendants and into Relators/Plainitffs Burke and Curtin, the Defendants Schiavi, Mendez and Walsh have been involved in one or more partnerships and/or joint ventures in the debt collection business, including the lucrative debt-buying and debt brokerage space.  As such, they are experienced businessmen who could build an operational outbound sales call platform and also sell MCA's.  In September of 2014, Boost Business Funding was formed and became involved with Defendant Mangi because they saw the amounts of money Mangi is capable of generating through his "sales techniques."

45.    Relator Burke was recruited by Defendant Neil Walsh to join Boost as an Equipment Leasing Specialist in July of 2015.  Burke was led to believe that Boost was a professional ISO, and was to provide comprehensive funding solutions to small and medium sized businesses, and Burke was to focus on equipment leasing to expand Boost's profits and customer base in a consultative fashion.  Burke is considered an

expert in equipment leasing, has over twenty years of experience in it with a stellar record of accomplishment in the industry.

46.     Relator Curtin was recruited by Defendant Neil Walsh to join Boost as a Funding Specialist in April of 2015.   Curtin was led to believe that Boost was a professional ISO, and was to provide comprehensive funding solutions to small and medium sized businesses, and Curtin was to sell MCA's and other financial products such as term loans and equipment leasing  in a consultative fashion.  Curtin has an undergraduate degree in finance, a law degree, is a Small Business Development Center Certified Business Advisor and has extensive experience guiding and advising businesses.

47.     Sometime after Relator Burke joined the company, the vision that Defendant Walsh presented had not yet materialized in terms of professionalism, consultative approach and income and earnings for funding and leasing specialists like Relators.  Sometime in July of 2015, Defendant Mangi appeared at Boost's offices, whom Relators had not yet met nor heard of, and began directing how things were to be done – completely at odds with the vision Walsh had presented.  Relators conferred privately and concluded that Walsh was a "front," that the company is all about "bait and switch" and that Roberto Mangi is the one who really runs the company.

48.     In this regard, the Sales Director was Maria Bentley, a former waitress with no college degree, who insisted that the representatives and specialists do anything — including lie to the customers — to close a sale.  Mangi insisted on a certain number of "call minutes" per day like a "boiler room operation" — never taking no for an answer.

49.     Mangi boasted to Relators and others in October of 2015 that his sales commission income is $100,000 per month, that he is the owner of Boost and FMS CA and FMS NY, and will terminate non-performing employees.  Relator Curtin also learned that Mangi bragged that "his sister has no idea how many companies she owns," that "he stays one step ahead of the SEC and IRS," and that "he has lawyers in every state."

50.     Relator Burke left the company in October 2015.  Curtin stayed on, working more closely with Walsh and Elevation Capital and therefore learning more about the interlocking connections among Defendants, but also left in December of 2015.  Curtin learned more recently that Mangi now brokers approximately $4,000,000 per month alone in MCA's, and with an average commission of 8 points, now makes some $320,000 per month in sales income alone.

51.     Relators conferred again privately in December 2015 and conducted additional research into Defendant Mangi due to the nearly shocking lack of business ethics and professionalism by Mangi and concern for their own professional careers and reputations.

52.     Relators uncovered both Mangi's background and a sophisticated web of interconnected companies designed in part to shield Defendant Mangi's assets and income from the Government's scrutiny.

## V.     THE FRAUDULENT SCHEME

53.     Plaintiffs incorporate by reference all of the allegations contained in the foregoing paragraphs as if fully restated herein.

54.     The Defendant's fraudulent scheme had the following elements:

     a.    Upon and information and belief and contrary to the terms and restrictions of his plea deal, Defendant Mangi has associated with and engaged in financial transactions with brokers and dealers.

     b.    Upon and information and belief and contrary to the terms and restrictions of his plea deal, Defendant Mangi has retained and/or acquired ownership of various financial organizations, mostly in his sister's name, and presently has an annual income of at least $3,840,000.00 in commissions alone.

     c.    Upon and information and belief and contrary to the terms and restrictions of his plea deal, Defendant Mangi has hidden income and assets and failed to pay government-ordered restitution to his former clients.

     d.    Upon and information and belief and contrary to the terms and restrictions of his plea deal, Defendant has failed to pay civil fines and penalties to the United States government.

55.    Between approximately February 7, 2011 and the present, Defendant Mangi has retained and/or acquired at least fifty (50) percent ownership and/or control of Boost, FMS NY, FMS CA, FMS Capital, Jet Stream, Gotham and Mercy Falls, despite not having his name legally attached to these companies.

56.    Upon information and belief, Defendant Mangi has an undisclosed ownership interest and or syndicating partnership and/or joint venture arrangement with Defendants Elevation Capital, Gotham Capital, Lawrence Schiavi and Luis Daniel Mendez.

57.    As evidence of this ownership and/or control, between April 10, 2015 and December 8, 2015 Defendant Mangi countermanded Neil Walsh, a management-level

executive of Boost, numerous times as if Mr. Walsh were Defendant Mangi's subordinate.

58.     As further evidence of this ownership and/or control, despite Defendant Mangi working primarily out of California, he travels to the Boost offices in New York regularly and interacts with the Boost offices in New York via video conference regularly and everyone in the Boost offices defers to Mangi as if he is the boss.

59.     As further evidence of this ownership and/or control, Defendant Mangi listens to various Boost agents' phone calls and has access to all agents' emails without their knowledge, and records agents' conversations with customers without their knowledge and consent.

### Count I
### False Claims Act

60.     Plaintiffs incorporate by reference all of the allegations contained in the foregoing paragraphs as if fully restated herein.

61.     Upon information and belief, according to Defendant Mangi's plea agreement, restitution orders, and terms of his release from incarceration, Defendant Mangi is required to accurately report his employment, income and assets.

62.     Upon information and belief, Defendant Mangi has by act or omission of material fact knowingly made, used or caused to be made or used "a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly [concealing] or knowingly and improperly [avoiding] or [decreasing] an obligation to pay or transmit money or property to the Government."

63.     By reason of Defendant Mangi's practices, as aforesaid, the Government has suffered substantial damages.

64.     Therefore Defendant Mangi is liable for treble damages and forfeitures under the False Claims Act, 31 U.S.C. § 3729- *et seq.*, as amended.

## Count II
## Fraudulent Conveyance to Avoid Paying a Debt

65.     Plaintiffs incorporate by reference all of the allegations contained in the foregoing paragraphs as if fully restated herein.

66.     Defendants Marina Afra and Steven Afra knew or should have known that Defendant Mangi owed an obligation to the Government.

67.     Defendants Marina Afra and Steven Afra knew or should have known that Defendant Mangi conveyed monies, assets, and other valuable property in Marina Afra's name without fair consideration.

68.     Defendants Marina Afra and Steven Afra knew or should have known that Defendant Mangi is the true and equitable owner of conveyed monies, assets, and other valuable property in Marina Afra's name without fair consideration.

69.     Consequently, the conveyance of any monies, assets and other valuable property in Marina Afra's name without fair consideration from Defendant Mangi should be annulled and set aside.

70.     Because this is a "matured claim" as that term is described in NY D&C Law §278, any conveyed monies, assets, and other valuable property, including Defendant companies, from Defendant Mangi to Marina Afra or Steven Afra should be immediately attached and levied pursuant to NY D&C Law §278.

71.     Alternatively or in addition, said Defendants have also made transfers and conveyances of monies, assets, and/or other valuable property in violation of 28 U.S.C. § 330 et seq.

72.     Defendants Schiavi, Walsh, Mendez, Retas, and Bentley knew or should have known the full extent of Mangi's background and that Defendant Mangi owed a large financial obligation to the Government.

73.     However, Defendants Schiavi, Walsh, Mendez, Retas, and Bentley, became partners with, co-mingled assets with, established joint ventures with, and/or profited from a relationship with Defendant Mangi knowing that they would have to maintain an ongoing façade through a complex web of secret, illicit, and interlocking ownership and control schemes to continue to profit from their relationship with Mangi.

74.     In addition, the aforementioned conduct was facilitated through various legal entities, including but not limited to, Defendants Boost Business Funding, LLC, Funding Merchant Source NY, Inc., Funding Merchant Source, LLC, FMS Capital, LLC, Jet Stream Capital, LLC, Gotham Capital, LLC, Mercy Falls, LLC, Elevation Capital, LLC, and one or more other currently unknown John Doe companies.

75.     And because this is a "matured claim" as that term is described in NY D&C Law §278, any conveyed monies, assets, and other valuable property, including Defendant companies interlocked through ownership and/or management with Defendant Mangi, any co-mingled or intertwined monies or assets should be immediately attached and levied upon pursuant to NY D&C Law §278, or, in the alternative, attached under the provisional remedies of CPLR 6201.

**WHEREFORE,** Plaintiffs Matthew Burke and David Curtin pray for judgment against Defendants as follows:

1.     Defendants cease and desist from violating 31 U.S.C. § 3729;

2.      This Honorable Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty of not less than $5,500.00 and not more than $11,000 for each violation of 31 U.S.C. § 3729;

3.      Plaintiffs be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act, an amount of at least 10% and up to 25% of the amounts recovered if the Government elects to intervene in this action; and, an amount of at least 25% and up to 30% of the amounts recovered if the Government elects to not intervene in this action;

4.      Plaintiffs be awarded pre-judgment interest, costs, and attorneys' fees;

5.      This Honorable Court issue an Order setting aside any Fraudulent Conveyances related to this action;

6.      This Honorable Court issue an Order of Attachment and Levy on Defendants' assets and bank accounts;

7.      For such other and further relief that the Court deems just, proper and equitable.

## JURY DEMAND

Plaintiffs demand trial by jury.


DATED:      April 29, 2016
            Buffalo, NY 14202

                          FLYNN|WIRKUS|YOUNG, P.C.

                          Scott R. Orndoff, Esq.
                          Attorney for Plaintiff
                          534 Delaware Avenue, Suite 014

## CERTIFICATE OF SERVICE

The undersigned, Scott R. Orndoff, hereby certifies that a copy of the foregoing pleading was served upon The Attorney General via the U.S. Attorney for Western District of New York, pursuant to FRCP Rule 4(i)(1)(A)(i), on this 29th day of April, 2016.

_____

Scott R. Orndoff

Buffalo, NY 14202
716-858-3112 - Phone
617-773-5510 - Facsimile

G:\F & A\CASE FILES\Miscellaneous Cases\Burke, Matt Qui Tam\Pleadings\Complaint\Complaint DRAFT 3.4.16.docx

To:

VIA HAND-DELIVERY

Hon. William J. Hochul, Jr.
United States Attorney for the WDNY
138 Delaware Avenue
Buffalo, NY 14202


Mary Pat Fleming, Chief, Civil Division
Assistant United States Attorney
United States Attorney for the WDNY
138 Delaware Avenue
Buffalo, NY 14202